IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MIDLAND NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19-CV-772 |
| STEVEN S. WILKES and RONNIE LEE SMITH, SR., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge

Before the Court are Plaintiff's Motion for Default Judgment on its Interpleader, (ECF No. 14), and a Motion to Intervene, (ECF No. 16), filed by American Benefit Life Insurance Company ("ABLIC"). For the reasons stated below, Plaintiff's motion will be granted in part and denied in part, and ABLIC will be permitted to intervene.

**I.    BACKGROUND**

In this interpleader action, Plaintiff, Midland National Life Insurance Company ("Midland"), alleges that Defendants, Steven S. Wilkes ("Wilkes") and Ronnie Lee Smith, Sr. ("Smith"), both claimed proceeds of a life insurance policy issued by Plaintiff to its insured, Linda N. Smith ("the deceased") who died on February 4, 2019. (*See* ECF No. 1.) Plaintiff issued the deceased a $100,000 life insurance policy in 1992. (*Id.* ¶¶ 4, 7.) The deceased listed her primary beneficiaries as "Surviving Spouse and Steven Shane Wilkes—son—to share alike or survivor." (*Id.* ¶ 9 (punctuation altered).) At the time, the deceased was married to Smith

and had a son, Wilkes. (*See id.* ¶¶ 8–9.) However, the deceased and Smith divorced in 2013 and the deceased does not appear to have remarried. (*Id.* ¶¶ 10, 19.) After the deceased passed away, her son, Wilkes, claimed one hundred percent of the policy's payout while her ex-husband, Smith, claimed fifty percent. (*Id.* ¶¶ 13, 18.)

As a result of Linda Smith's death, Plaintiff "admits its contractual liability in the amount of $100,000 plus applicable interest." (*Id.* ¶ 20.) Plaintiff has already deposited this sum, $102,011.88, with the Clerk of Court. (ECF No. 13.) However, because Plaintiff is "unable to determine whether any person fit the description of 'surviving spouse' at the time of [the deceased's] death," it does not know to whom it should direct the policy proceeds. (*See* ECF No. 1 ¶¶ 19, 22.) Thus, Plaintiff initiated this interpleader action as a "disinterested stakeholder and is indifferent to which of the claimants is entitled to the proceeds" of the policy. (*Id.* ¶ 22.) In filing suit, Plaintiff hoped to avoid "exposing itself to multiple liability, multiple litigation, or both." (*Id.* ¶ 21.) After Midland filed its Complaint, Wilkes waived service of summons, (*see* ECF No. 5), and Smith was served, (*see* ECF No. 8). After neither Wilkes nor Smith filed an answer or other responsive pleading, the Clerk of Court entered a default against Defendants on October 15, 2019. (ECF No. 11.) Plaintiff then filed the instant motion for default judgment pursuant to Federal Rules of Civil Procedure 22 and 55 seeking "the entry of an order discharging it from further liability under the Policy, awarding its actual attorney fees and costs incurred in bringing its interpleader, and dismissing it from all further proceedings." (ECF Nos. 14; 15 at 2.)

## II. MOTION FOR DEFAULT JUDGMENT

Plaintiff specifically requests that this Court (1) dismiss it from this action with findings that it acted in good faith in interpleading its admitted liability and that it has no further liability to Defendants or those acting through them in connection with the deceased's policy; (2) find that Defendants are "collaterally estopped from commencing or prosecuting any proceeding or claim against Midland" in connection with the deceased's policy; and (3) award Plaintiff $8,150.25 in fees and costs. (*See* ECF No. 14 at 6.) The Court will now consider each request.

*A. Dismissal*

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." *Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F. App'x 767, 769 (4th Cir. 2002). The device "relieves the stakeholder of the risk of guessing which claimant should be the beneficiary of a contested fund." *Sun Life Assurance Co. of Can. v. Bew*, 530 F. Supp. 2d 773, 775 (E.D. Va. 2007) (internal quotation and citation omitted). "An interpleader action generally proceeds in two stages." *Wells Fargo Bank, N.A. v. Wanki*, No. GJH-19-871, 2019 WL 6684134, at *2 (D. Md. Dec. 6, 2019); *see also Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 626 (D.N.J. 2015); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 317–18 (S.D.N.Y. 2014). First, "the [c]ourt determines whether the stakeholder has properly invoked interpleader." *Wanki*, 2019 WL 6684134, at *2 (internal quotation omitted); *see also Stonebridge*, 89 F. Supp. 3d at 626; *Guardian*, 45 F. Supp. 3d at 318. In determining whether interpleader is proper, the Court must consider whether: "(1) it has jurisdiction over the suit; (2) a single fund is at issue; (3) there are adverse claimants to the fund; (4) the stakeholder is actually threatened with multiple liability; and (5) equitable

3

concerns [would] prevent the use of interpleader." *Wanki*, 2019 WL 6684134, at *2 (alteration in the original) (quoting *Wells Fargo Bank, N.A. v. Eastham*, No. DKC 16-0386, 2016 WL 2625281, at *2 (D. Md. May 9, 2016)). If interpleader is appropriate, the court then dismisses the plaintiff from the action and, in the second stage, determines the rights of the remaining defendants. *See id.*; *Stonebridge*, 89 F. Supp. 3d at 626; *Guardian*, 45 F. Supp. 3d at 318.

Here, Plaintiff properly invoked interpleader and therefore should be dismissed from this action. First, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are diverse and the amount in controversy exceeds $75,000. (*See* ECF No. 1 ¶ 5.) Second, a single fund is at issue, the life insurance policy Plaintiff issued to the deceased. (*See id.* ¶ 4.) Third, there are adverse claimants to the fund as both Wilkes and Smith have claimed they are owed a payout. (*Id.* ¶¶ 13, 18.) Fourth, Plaintiff is actually threatened with multiple liability because both Defendants have claimed funds and Midland may be liable for damages if it guesses incorrectly as to who to distribute the contested funds to. *See Wanki*, 2019 WL 6684134, at *3. Finally, no equitable concerns prevent the use of interpleader; indeed, interpleader exists, in large part, to resolve just this kind of problem for insurance companies who know they must pay but know not whom to pay. The Court will therefore dismiss Plaintiff from this lawsuit and discharge Plaintiff of any liability to Defendants or parties affiliated with them in connection with the deceased's insurance policy beyond the $ 102,011.88 Plaintiff has already deposited with the Clerk of Court. Furthermore, as there is no allegation of any kind that Plaintiff has acted in bad faith, the Court will, as requested, find that Plaintiff "acted in good faith by interpleading its admitted liability." (*See* ECF No. 14 at 6.)

### B. Collateral Estoppel

Plaintiff next requests a finding that Defendants are "collaterally estopped from commencing or prosecuting any proceeding or claim against Midland" in connection with the deceased's policy. (*Id.*) Though the Court declines to find that a future court could not hear a claim brought by Defendants related to Plaintiff's liability regarding the deceased's life insurance, the Court notes that the elements of collateral estoppel or issue preclusion appear to be present here. *See Cmty. State Bank v. Knox*, 850 F. Supp. 2d 586, 597 (M.D.N.C. 2012) (reciting the elements of collateral estoppel).

### C. Attorneys' Fees and Costs

Next, Plaintiff asks the Court to award it $8,150.25 in fees and costs for bringing this lawsuit. (*See* ECF No. 14 at 6.) "[I]t 'is settled that a federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action whenever it is fair and equitable to do so.'" *Combined Ins. Co. of Am. v. Christian*, No. 1:14CV647, 2015 WL 5022379, at *3 (M.D.N.C. Aug. 24, 2015) (quoting *Sun Life Assurance Co. of Can. v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009)); *see also Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Sprague*, 251 F. App'x 155, 156 (4th Cir. 2007) (per curiam) ("[A]n interpleading plaintiff may be reimbursed for its costs at the district court's discretion."); *Bew*, 530 F. Supp. 2d at 775 ("The award of attorneys' fees is within the Court's discretion."). "In determining if it is fair and equitable to allow costs and fees, courts look to factors such as (1) whether the [interpleading] party has acted in bad faith or (2) whether the interpleader is disinterested in the litigation." *Combined Ins. Co. of Am.*, 2015 WL 5022379, at *3. Furthermore, courts also consider the size of the requested award in relation to the size of the fund at issue, treating with skepticism requests

for awards that would substantially diminish the proceeds available to the claiming defendants. *See id.* at *4 (contrasting an excessive request for fees and costs that would have reduced the policy proceeds at issue by 49 percent with past cases that approved awards ranging from 1.5 to 24 percent of the proceeds at issue); *Minn. Life Ins. Co. v. Webb*, No. 1:13-cv-01242 (AJT/IDD), 2014 WL 1681688, at *8 (E.D. Va. Apr. 7, 2014) (approving a request for fees and costs where the plaintiff was "only seeking approximately 10% of the amount of the contested benefits"). Finally, courts should not permit insurance companies to "'transfer a part of their ordinary cost of doing business to [the claimants]' by instituting an interpleader action every time a minor problem arises in the payment of insurance policies." *See UNUM Life Ins. Co. of Am. v. Battle*, No. 5:07-CV-308-H, 2009 WL 10705411, at *2 (E.D.N.C. Sept. 30, 2009) (quoting *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965)) (alteration in the original).

After considering the factors discussed above, and after reviewing Plaintiff's declaration and exhibit documenting its expenditures in this case, (ECF No. 14-1), the Court concludes that Plaintiff's request for $8,150.25 in fees and costs is reasonable and should be granted. In reaching this conclusion, the Court was guided by the facts that (1) there is no indication Plaintiff has acted in bad faith; (2) that Plaintiff is a disinterested party; and (3) that Plaintiff's request—which amounts to about 8 percent of the policy proceeds at issue— resembles previous awards of costs and fees in interpleader cases, *see, e.g., Combined Ins. Co. of Am.*, 2015 WL 5022379, at *4 (collecting cases). Finally, the Court notes that this case presents unique circumstances differentiating it from the ordinary course of business for an insurance company, namely that a default has been entered against Defendants, an inconvenience to

Midland that militates in favor of awarding fees and costs. *See UNUM Life Ins. Co. of Am.*, 2009 WL 10705411, at *2 (awarding fees and costs, in part, because an entry of default against defendants took an interpleader action outside an insurance company's normal course of business).

## III.  MOTION TO INTERVENE

Also, before the Court is a motion to intervene filed by ABLIC pursuant to Federal Rule of Civil Procedure Rule 24(a)(2) and (b)(1). (ECF Nos. 16; 16-1 at 1.) Defendant Steven Wilkes owes ABLIC $173,449.31 from an unrelated lawsuit in Texas. (ECF Nos. 16-1 at 2; 16-2 at 11.) To help pay off that debt, Wilkes agreed to assign his interest in his mother's life insurance policy to ABLIC.[1] (*See* ECF No. 16-2 at 16.) It appears that Wilkes was subsequently arrested. (ECF No. 16-1 at 3.) As a result, ABLIC argues that "Wilkes is in no position to assert his claim to the proceeds" of the life insurance policy and that ABLIC should therefore be allowed to intervene to protect its interest in the outcome of this litigation. (*Id.* at 3.)

In the Fourth Circuit, a party can intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure if its motion is timely and the proposed intervenor demonstrates "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *See N.C. State Conf. of the NAACP v. Cooper*, 332 F.R.D. 161, 165 (M.D.N.C. 2019) (quoting *Teague v. Bakker*, 931 F.2d 259, 260–

---

[1] Though ABLIC refers to this agreement as a "Consent Order," (*see* ECF No. 16-2 at 5), the Court notes that the version of the "Order" that appears before it has not been signed by a judge and is therefore a contract.

61 (4th Cir. 1991)). "The determination of timeliness is committed to the sound discretion of the trial court." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). "When assessing the timeliness of a motion to intervene [courts] consider (1) how far the case has progressed, (2) the prejudice to other parties caused by any tardiness in filing the motion, and (3) the reason for any tardiness." *Scott v. Bond*, 734 F. App'x 188, 191 (4th Cir. 2018).

Here, ABLIC filed its motion to intervene on December 18, 2019, fairly soon after Wilkes agreed to assign ABLIC the proceeds of the deceased's insurance policy in November 2019.[2] (ECF Nos. 16 at 3; 16-2 at 5.) This motion is timely because (1) this case has not yet progressed to the merits; (2) ABLIC's intervention would not prejudice any party; and (3) because ABLIC acted expeditiously to intervene, not in a tardy manner. Furthermore, ABLIC has an interest in the subject matter of the action—its ability to recover whatever Wilkes is awarded—and that interest would be impaired if Ronnie Smith is awarded half of the deceased's insurance policy. Finally, that interest will not be adequately protected unless ABLIC intervenes as no party currently in the litigation has an interest in advocating for Wilkes' recovery—Midland has been dismissed from this case and Wilkes, even if he could litigate while incarcerated, has little incentive to vigorously champion his own recovery as he will not keep any of the money awarded him. Thus, ABLIC will be permitted to intervene in this case to protect its interest.

For the reasons stated above, the Court hereby enters the following:

**[Order to Follow]**

---

[2] The agreement between the parties labeled "Consent Order" and attached as ECF No. 16-2 at 10–19 is undated. However, ABLIC reports that it reached its agreement with Wilkes sometime "[i]n November 2019." (*Id.* at 5.)

**ORDER**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment, (ECF No. 14), is hereby GRANTED in part and DENIED in part. Plaintiff's motion is GRANTED to the extent that it seeks an order dismissing Plaintiff from this case with a finding that it has acted in good faith by interpleading its admitted liability under the deceased's life insurance policy and that neither Plaintiff nor its affiliated individuals and entities shall have any further liability to Defendants, or any persons or entities claiming through them, for the proceeds of the policy. Plaintiff's motion is DENIED to the extent that it asks the Court to find that Defendants are collaterally estopped from bringing any claim against Midland or its affiliated entities arising out of the deceased's insurance policy.

IT IS FURTHER ORDERED that the Clerk of Court shall issue a check in the amount of $8,150.25 to Midland for its costs and fees in this proceeding. This amount shall be drawn from the funds Plaintiff has deposited with the Registry of the Court. The check shall be made payable to Midland National Life Insurance Company c/o Chittenden, Murday & Novotny, LLC, 303 West Madison Street, Suite 1400, Chicago, IL 60606.

IT IS FURTHER ORDERED that ABLIC's Motion to Intervene, (ECF No. 16), is GRANTED.

IT IS FURTHER ORDERED that ABLIC's Answer and Crossclaim of Intervenor, (ECF No. 16-2), is ACCEPTED and shall be deemed filed as of the date of this Order.

This, the 28th day of January 2020.

/s/Loretta C. Biggs
United States District Judge